TUTTLE *v.* BRISCOE MANUFACTURING CO.

1. DAMAGES—DEATH—ESTATES OF DECEDENTS—NEGLIGENCE.
In an action for running down and killing plaintiff's decedent with defendant's motor truck, as it passed across the sidewalk on a driveway, damages of $10,000 were not excessive for an expectancy of over 26 years, decedent being 42 years of age, a married man with a family, and earning a salary of $3,500 per year.

2. AUTOMOBILES—NEGLIGENCE—DUE CARE—PLEADING.

A declaration alleging that defendant's truck was out of repair, that its driver was incompetent, and that he did not sound, his horn, or give any warning of his approach, also that he did not use proper and reasonable caution and judgment in running, operating, and propelling the auto truck, did not have it under complete control, did not slacken his speed, or keep a careful and proper lookout, and, when he perceived that decedent was not aware of the approaching truck, did not give a signal, but propelled and operated the truck so negligently, carelessly, against and upon the intestate, etc., sufficiently charged negligence in the operation of the motor vehicle, and sufficiently stated plaintiff's claim that the driver negligently managed the car.

3. SAME—SUBSEQUENT NEGLIGENCE.

Irrespective of the question of plaintiff's duty to be on the lookout for his own safety, there are occasions when he is in point of fact ignorant of approaching danger, and if the driver has had time to realize, or, if he had kept a lookout, ought to have realized the peril of the other, he is required to use increased caution to avoid injuring him.

4. SAME—CARE REQUIRED.

And one driving a heavy, powerful automobile truck is charged with the duty to exercise every reasonable precaution to avoid injuries to a pedestrian who is lawfully on the sidewalk.

5. SAME—NEGLIGENCE—DEATH.

Decedent was returning from a factory office and started along the sidewalk towards his car, crossing a drive or passageway in doing so, when defendant's motor truck came out of the covered portion of the drive, and, as it neared decedent, the driver checked its speed so as to run at two or three miles an hour, and, as he claimed, blew his horn. Deceased apparently did not hear the signal. Plaintiff's testimony showed that decedent was just at that moment told by an employee of the factory that he could not enter there, and he stopped and was about to turn when the truck struck him and knocked him down. Defendant's driver claimed that he backed right in front of the car. There was ample room to have turned and avoided plaintiff's intestate, and, after the

driver applied the emergency brake, the truck ran about 17 feet before it stopped. The driver testified that decedent was five or six feet from the car when he discovered the peril of the pedestrian and attempted to stop the car. *Held*, that the conflicting testimony presented a question for the jury as to the negligence of the driver, and the court properly submitted it to them. *Held*, also, that the question of intestate's contributory negligence was one of fact.

6. SAME—CONTRIBUTORY NEGLIGENCE.

While it was the duty of decedent to exercise ordinary care for his own safety, he was not required, as a matter of law, to look back, while he was out in the street within the line of the sidewalk, to see if he was going to be run over by a conveyance from behind.

Error to Wayne; Hally, J. Submitted October 6, 1915. (Docket No. 9.) Decided January 3, 1916.

Case by Carl B. Tuttle, as administrator of the estate of William H. Eaton, deceased, against the Briscoe Manufacturing Company for the wrongful death of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Affirmed.

*Keena, Lightner, Oxtoby & Hanley,* for appellant.

*Bishop & Kilpatrick,* for appellee.

STEERE, J. On November 11, 1912, plaintiff's intestate, William H. Eaton, was run over and fatally injured by a motor truck of defendant driven by one of its employees. This writ of error is brought to review a verdict and judgment for $10,000 rendered in the Wayne county circuit court in an action by plaintiff as administrator to recover damages for Eaton's death.

The accident occurred on or near the sidewalk in front of the Abbott automobile factory on the west

side of Beaufait avenue in the city of Detroit, at a point where a driveway leads west from the pavement into and through the factory building which fronts on and along the street line 4½ feet back of the sidewalk, which is 6 feet in width with its outer edge about 11 feet from the street curb. The driveway is 17½ feet wide where it comes through and out of the building onto the street where were two hinged gates, which joined in the center of the passageway when closed. From there it approaches the pavement with a slight decline, its width expanding with curves each way which are about 43 feet apart at the street curb line. Eaton was a middle-aged business man residing in Detroit, and owned an Abbott car upon which he was having some repairs made at a garage owned by a Mr. Danforth in the western part of the city, and on the morning of the accident they, with an employee of Danforth named Findlay, rode over in the car to the Abbott factory to get a new carburetor for it, stopping the car in front of the factory at the curb just north of the driveway, when Eaton, leaving Danforth, who had driven the car, sitting in the front seat with his engine running, and Findlay in the rear seat, went diagonally across the driveway to the office, which was located adjacent to it on the ground floor on the south side with an entrance from the sidewalk. He soon came out of the office and started northeast across the driveway towards his car and made some call or motion to its occupants indicating they should come on, when the watchman or gatekeeper at the open entrance of the passageway spoke and said, "You can't come in here," attracting Eaton's attention and apparently causing him to halt, or turn, or step back (exactly what he did is in dispute), and just then a heavy Sampson auto truck of defendant, weighing three tons, coming out of the entrance way, struck and threw him down, the left front wheel passing over his neck and

killing him instantly, stopping with his body lying under the truck between the front and rear wheels.

Three witnesses to the accident were produced by plaintiff—Danforth and Findlay, who sat in Eaton's car at the curb, and Price, the driver of defendant's truck; the latter called for examination under the statute relative to calling opposing parties or their agents as witnesses. Defendant swore no witnesses, but moved for a directed verdict at the close of plaintiff's evidence, on the ground that it failed to make a *prima facie* case, but disclosed that the accident was imputable to deceased's own negligence, and on denial of said motion rested its case. A motion for a new trial was subsequently made on the grounds previously urged for a directed verdict, and for the further reason that the verdict was against the weight of evidence and excessive.

At the time of the accident Eaton was 42 years of age, a married man residing with his wife and family in Detroit, where he had lived about 19 years, and was earning $3,500 per year as manager of advertising for the J. L. Hudson Company. While defendant's chief contention is that no actionable negligence was proven and a verdict should have been directed in its favor, error is also assigned on the ground that the verdict is excessive, and that question is submitted for the judgment of the court in defendant's brief.

In view of the evidence as to deceased's business ability and earning capacity, expectancy of life which, by the tables of mortality, would be 26.72 years, contributions to his family and manner of living, we are unable to say, as a matter of law, that the conclusions of the jury in that particular should be disturbed.

Defendant's various assignments of error, which include rulings on its several objections, motions, and requests to charge, are argued under four headings, as follows:

1. Question of negligence on the part of the defendant company.

2. Contributory negligence of decedent, Mr. Eaton.

3. The question of the city traffic ordinance.

4. Refusal of the court to grant a new trial.

Touching the matter of pleading, it is urged for defendant that a general averment of lack of vigilance or want of care, without specifying and proving in what particular, amounts to nothing, and the only items of negligence "more or less clearly alleged" in plaintiff's declaration, with sufficient particularity to authorize sustaining proof are, that the truck was out of repair (especially its brakes), its driver was incompetent, did not sound his horn or give other signals, did not observe the Detroit traffic ordinance, and was guilty of wanton neglect. Reviewing the record as to these averments it is contended that every specific item of alleged negligence is eliminated, and there is nothing left under plaintiff's pleadings upon which to base any general claim of negligence.

The pertinent portions of the traffic ordinance set out in plaintiff's declaration require vehicles to be "driven in a careful manner with due regard for the safety and convenience of pedestrians and other vehicles," that automobiles be provided with adequate brakes, horns, etc., and that some plainly visible or audible signal be given on approaching pedestrians, etc. Independent of the circumstances of the accident we find no testimony to support the charge that the driver was incompetent, and there is no evidence that the truck was out of repair.

In addition to the particularized items of negligence referred to, there also appears in plaintiff's somewhat lengthy declaration, with sufficient allegations of absence of negligence on the part of deceased and duty of defendant, the charges made with varying repetitions that defendant did not—

"use due, proper, and reasonable caution and judgment in running, operating, and propelling said auto truck or motor vehicle, * * * and when coming out of said dark passageway onto and across said public sidewalk, approach, and highway, and when approaching plaintiff's intestate * * * did not then and there have said auto truck or motor vehicle under full and complete control, and did not then and there run said auto truck or motor vehicle so as to avoid striking and injuring plaintiff's intestate, and did not then and there slacken the speed of said auto truck or motor vehicle when approaching plaintiff's intestate and others lawfully upon said highway, * * * did not make sure that said movement could be made with safety to plaintiff's intestate, * * * and did not then and there keep a careful and proper lookout ahead so as to avoid striking and running into plaintiff's intestate; * * * and when said defendant, its servants, * * * saw plaintiff's said intestate upon said Beaufait avenue and the approach and sidewalk thereon, and when they knew and saw and had reason to believe that plaintiff's said intestate did not see and was not aware of the approach of said auto truck or motor vehicle and of the impending and imminent danger arising from its approach did not immediately and effectively give a warning or signal, * * * but on the contrary, after discovering and seeing plaintiff's said intestate, propelled and operated said auto truck or motor vehicle in so grossly negligent, careless, wanton, and wilful a manner when they knew and saw and had reason to believe that plaintiff's said intestate did not see and was not aware of the approach of said auto truck or motor vehicle, * * * and in a heedless manner, and not regarding the fact that such intestate did not see or observe the approach of said auto truck or motor vehicle, and well knowing and seeing that said intestate had not been warned of the approach of said auto truck or motor vehicle and that he was not aware of its approach, and that he was not aware of the impending and imminent danger * * * ran into and upon plaintiff's said intestate inflicting the injuries herein complained of."

We think the declaration sufficiently states a com-

mon-law action of negligence, and contains sufficient matter to apprise defendant, beyond the five items particularly pointed out, of the claim that its agent negligently managed and operated the machine under the circumstances alleged, when driving where and as he did at that particular time. *Post* v. *Express Co.,* 76 Mich. 574 (43 N. W. 636) ; *O'Donnell* v. *Lange,* 162 Mich. 654 (127 N. W. 691, Am. & Eng. Ann. Cas. 1912A, 847) ; *Kessler* v. *Leeds,* 51 Ind. 212; and *Dougherty* v. *Davis,* 51 Pa. Super. Ct. 229.

Counsel for both parties devote considerable space in their briefs to the question of whether the driver of the truck blew his horn. He testified that he did so two or three times, while the other witnesses testified they did not hear it. Plaintiff's counsel claimed Price testified at the coroner's inquest that he did not sound his horn, and when, after he had denied so testifying, counsel sought to prove the fact, an objection to such testimony was sustained. Plaintiff is not in a position to avail himself of any error in this ruling, and under the present condition of this record it cannot be said there is legal testimony sustaining his allegation that no signal was given. *Stewart* v. *Railroad Co.,* 119 Mich. 91 (77 N. W. 643) ; *Britton* v. *Railroad Co.,* 122 Mich. 359 (81 N. W. 253) ; *Bond* v. *Railway Co.,* 128 Mich. 577 (87 N. W. 755). But conceding that Price did sound his horn, that fact in itself would not necessarily exculpate him from negligence if it was apparent to him as he approached Eaton in the driveway ahead that he did not hear or notice the warning and was unconscious of the approaching truck. Price himself testifies:

"His back was towards me and he did not look around and see me. He did not look around any of the time when he was walking across the roadway. * * * Eaton did not pay any attention to the blowing of the horn."

The evidence is strong in this case that Eaton was unaware of the approach of this truck and his danger until it was too late for him to avoid the injury, and the situation was such that Price knew of that condition.

"Irrespective of the question of plaintiff's duty to be upon the lookout for his own safety, there are occasions when he is, in point of fact, ignorant of approaching danger. Under such circumstances, if the operator has had time to realize, or if he had kept a proper lookout, should have realized, that the other was in peril or at a disadvantage, 'he must exercise increased exertion to avoid' an accident." Babbitt on Motor Vehicles (1911), § 964a.

The evidence in this case plainly presents an issue of fact for the jury upon that proposition. The account of the accident by the various witnesses, detailing surrounding circumstances, sequence of events and the simultaneous acts of Price and Eaton, naturally bring the questions of negligence and contributory negligence together for consideration. These the court can only pass upon to the extent of determining whether conflicting testimony makes them issues of fact for a jury.

Eaton was run over in the street where he had a right to be, a pedestrian practically on the sidewalk and on a part of the street which, but for a driveway into private property, was a safety zone from vehicles. Price was driving from private property through a covered passageway across the sidewalk to get out upon the street. He had an equal right upon the street, but was riding upon and driving a heavy, powerful auto truck from which, so far as physical danger to himself was involved, he could contemplate with complacency the ordinary hazards of the street, even including the common automobile. Though comparatively safe himself the serious responsibility and duty rested upon him, according to the size, character,

power, and manner of movement of the vehicle he was driving to operate it with commensurate vigilance, and use every reasonable precaution to avoid causing injury—not to simply take chances on what others might do to avoid him.

Touching the question of Eaton's contributory negligence, it appears he was not crossing a public street, but was upon one inside its curb line, crossing a private driveway which led into the street, and was on or near the sidewalk, a portion of the street especially set aside for pedestrians. It was of course his duty to exercise such care and caution as ordinarily prudent persons would under like circumstances. He was going diagonally away from the building through which this driveway ran in a straight line for about 40 feet and certainly not obliged as a matter of law when out on the street to look back to see whether he was in danger of being run over by a conveyance from behind. 2 Elliott on Roads and Streets (3d Ed.), § 1088; *Hennessey* v. *Taylor*, 189 Mass. 583 (76 N. E. 224, 3 L. R. A. [N. S.] 345, 4 Am. & Eng. Ann. Cas. 396); *Gerhard* v. *Motor Co.*, 155 Mich. 618 (119 N. W. 904, 20 L. R. A. [N. S.] 232). Under the circumstances of this case his contributory negligence is narrowed down to the question of whether, while on his way across the driveway, he immediately turned back and suddenly stepped in front of the on-coming truck when it was so near him that the driver, exercising ordinary vigilance on his part, was unable to stop or turn aside in time to avoid injuring him. If this was shown without dispute it would preclude recovery, but the testimony is in conflict upon that issue. The three witnesses agree that when the watchman spoke to Eaton he checked his progress and turned, but they do not agree that he stepped back in front of the approaching truck. Price testified that Eaton was over to one side, and if he had stood there the truck would have

passed him all right, but says, "He kind of hollered, and then turned round, backed into me;" he also says that Eaton started to walk back in the direction of the office from which he had come and "when he turned round he turned right round in front of the wheel. He. had both legs between the two wheels;" while Danforth and Findlay testify that just as he turned the truck was right upon him, and the left front wheel instantly struck him before he had time to avoid it. Of his stepping backward, as asserted by Price, Danforth testified that as he turned around the front wheel caught his leg, and while facing the radiator as the truck came upon him he went three or four steps backward, "with the machine running him down," trying to grab something and "sliding down" until the truck ran over him, after which it stopped with its front wheels at the curb. The trial court, in sustaining an objection by defendant, refused to permit plaintiff to go into the question of discovered or subsequent negligence (which the circumstances of this case seem to suggest, *Richter* v. *Harper*, 95 Mich. 221-225 [54 N. W. 768]), and squarely charged the jury:

"In order to hold the defendant liable you must not only find that the defendant was guilty of negligence, but you must also find the affirmative fact that plaintiff's intestate was free from contributory negligence."

We think the question of deceased's conduct in the emergency which then unexpectedly confronted him was for the jury.

As to defendant's negligence, there is evidence in the case that deceased was nearly across the driveway when he stopped, leaving ample room for Price to have passed him on the right, that he did not step back in front of the truck which was running directly towards him when he stopped; that Price saw his movements and the impending danger in ample time to have stopped the truck before reaching him at the speed it

was running, and by the exercise of reasonable care and promptness could have avoided the accident. Price, Danforth, and Findlay all testify to familiarity with this make of Sampson truck, and state that upon the slight incline from the building to the street, with the ground dry as it then was and no danger of skidding, it could easily have been stopped in from one to two feet when running at four miles an hour. Price testified that when he saw Eaton about a length and a half of the truck ahead of him, with his back turned toward the truck and not looking around or apparently noticing his signal, he applied the service brake with his foot and slackened speed, which was then only about 4 miles an hour, until the truck was just crawling along 2 or 3 miles an hour when he reached the gate, and on coming out to the inner edge of the sidewalk, which was 4½ feet from the building, he put on the service and emergency brakes with full force as Eaton stopped and turned, and kept them on full force until the truck stopped at the pavement. The distance from where he says he applied these brakes, and resorted to every expedient for stopping, to where the truck actually stopped is about 17½ feet. He further states that at the time he discovered the emergency and attempted to stop, Eaton was 5 or 6 feet in front of his own automobile, which was down upon the paved way outside of the street curb—also that he was about 2½ feet from the outer edge of the sidewalk when the machine first hit him. The driveway curved out from the sidewalk to over 40 feet at the street curb, and Price locates Eaton, as he turned, 5 or 6 feet in front of his own automobile which was north of the entrance to the driveway. There was abundant evidence in the case tending to show room in the driveway for Price to divert the truck to the right of where Eaton was struck, and thus have avoided him. A careful examination of this testimony

as a whole well satisfies us that it was sufficiently contradictory as to Price's negligence to render it a question of fact to be determined by a jury rather than one of law for the court. Though naturally differing in detail of circumstances, the following automobile accident cases which were held properly left to the jury on the questions of negligence of the respective parties are, with the authorities there cited, in may respects persuasively analogous to the instant case: *Diamond* v. *Cowles*, 174 Fed. 571 (98 C. C. A. 417); *Arseneau* v. *Sweet*, 106 Minn. 257 (119 N. W. 46); *Quellette* v. *Motor & Machine Works*, 157 Wis. 531 (147 N. W. 1014, 52 L. R. A. [N. S.] 299); *Domke* v. *Gunning*, 62 Wash. 629 (114 Pac. 436); *Bongner* v. *Zeigenhein*, 165 Mo. App. 328 (147 S. W. 182); *Smith* v. *Coon*, 89 Neb. 776 (132 N. W. 535); *Baker* v. *Close*, 204 N. Y. 92 (97 N. E. 501), reported in 38 L. R. A. (N. S.) 487, with extensive notes; *Schock* v. *Cooling*, 175 Mich. 313 (141 N. W. 675).

We have examined with care defendant's numerous assignments of error launched against the court's charge. The charge is somewhat lengthy, covering nearly seven pages of the printed record and goes quite fully into the various phases of the case suggested by plaintiff's 37 requests to charge and defendant's 13. The court extracted from those requests, in the same or similar language, the greater part of the charge which, considered as a whole, we think fully and fairly stated to the jury the questions involved and the principles of law necessary for an understanding of their duty in deciding the issues of fact submitted to them.

We find no reversible error in the case, and the judgment is therefore affirmed.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.