LAMBERT *v.* MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY CO.

RAILROADS—NEGLIGENCE— STATUTORY SIGNAL — EVIDENCE — SUFFICIENCY.

> In an action against a railroad company for the death of plaintiff's decedent caused by a collision between an automobile in which decedent was a passenger and defendant's train at a highway crossing, where the negligence relied upon was failure to give the statutory crossing signal, testimony by plaintiff's witnesses, that they did not hear the signal given, where it does not appear that they were listening or giving any heed or attention to the train, *held,* insufficient to take the case to the jury in the face of positive testimony that the signal was given.

Error to Delta; Flannigan (Richard C.), J. Submitted January 20, 1920. (Docket No. 12.) Decided February 27, 1920.

Case by Adam Lambert, administrator of the estate of John Sigatagon, deceased, against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company for the alleged negligent killing of plaintiff's decedent. Judgment for defendant *non obstante veredicto.* Plaintiff brings error. Affirmed.

*H. R. Dotsch (T. J. Riley,* of counsel), for appellant.

*G. R. Empson,* for appellee.

FELLOWS, J. The Gladstone Auto Sales Company was engaged in carrying passengers for hire between Gladstone and Rapid River in Delta county. In the conduct of this business it used a seven-passenger Hudson car. The car had inclosing curtains but there were openings around the doors large enough "to stick

your finger through." There were chains on the wheels. The highway traveled in making the trip crosses the line of defendant about 5 miles from Gladstone. For upwards of 2,000 feet before reaching the crossing the highway and railroad run parallel and adjoining. Where the curve begins in the highway to cross the track is about 150 feet from the track. The whistling post is 1,320 feet west of the crossing. About noon on December 29, 1917, the automobile of the Gladstone Auto Sales Company left Gladstone on its regular trip to Rapid River. It was around zero weather. Plaintiff's decedent was a passenger. With him in the car when it left Gladstone was a man named Segerstine and a stranger. One Lewis was the driver. A short distance out of Gladstone, a Mrs. McDonald and her young son became passengers. At the crossing above referred to the automobile collided with a fast passenger train of defendant and plaintiff's decedent was so seriously injured that he died within a few hours. The only negligence relied upon was failure to give the statutory crossing whistle, and the only question here presented is whether there was any evidence of probative force against the positive testimony that such signal was given so as to take that question to the jury.

The engineer of defendant testified to giving the usual crossing whistle, two short and two long blasts before coming to the whistling post, and to repeating the signals before reaching the crossing upon discovering that the automobile was not slowing up. Three other employees testified to the giving of the signals on both occasions. A young man named Chalkline who was entirely disinterested and who was walking along the highway in a westerly direction also testified to the giving of the usual crossing signals around the whistling post and again when near the crossing. Plaintiff called Mrs. McDonald and Mr. Segerstine as

witnesses. Both testified that they heard the whistle when the train was near the crossing but that they did not hear any other signals. Neither testified to listening for the signals or paying any attention to the railroad. It does not appear that either of them knew the highway crossed the track. Plaintiff also called Lewis, the driver of the machine. He testified that he looked up the track when about 125 feet west of the curve in the highway and to seeing no train although the track ran straight for about a mile. He testified that he listened *after* he turned the curve but he does not testify that he listened *before,* or that his mind was on the coming of a train until he rounded the curve in the highway. The testimony of plaintiff's witnesses is convincing that as the automobile rounded the curve in the highway, the second signals were given, their attention was then challenged to the train which was then about 475 feet west of the crossing; that up to that time no one of them had been listening for a train or attentive to the subject of whether one was coming. The testimony shows that the train was making from 47 to 48 miles per hour and the automobile from 13 to 15 miles per hour. The mathematical calculation will demonstrate that when the train was 475 feet west of the crossing, and this is where plaintiff claims it was when the signals were given which were heard by his witnesses, the automobile was about rounding the curve. Up to that point so far as the record discloses none of the witnesses had been listening for a train or its whistle, none of them had heard its rumbling although it was practically upon them. Under these circumstances may it be said that testimony of witnesses that they did not hear the signals given takes the case to the jury where positive testimony that the signals were given is in the case? Counsel for the plaintiff relies on the following cases: *Tietz* v. *Railway Co.,* 166 Mich. 205; *Lonis* v. *Railway Co.,*

111 Mich. 458; *McDuffie* v. *Railway Co.*, 98 Mich. 356; *Crane* v. *Railroad Co.*, 107 Mich. 511; *Cinadar* v. *Railway Co.*, 193 Mich. 38; *Garland* v. *Railroad Co.*, 196 Mich. 695; *Nichols* v. *Railway Co.*, 203 Mich. 372; *Hinkley* v. *Railway Co.*, 162 Mich. 546.  Counsel for defendant relies on the following cases:  *Stewart* v. *Railroad Co.*, 119 Mich. 91; *Britton* v. *Railroad Co.*, 122 Mich. 359; *Tuttle* v. *Briscoe Manfg. Co.*, 190 Mich. 22; *Bond* v. *Railway Co.*, 128 Mich. 577.

A consideration of these cases, and the measure of proof in each of them will be helpful, not only to demonstrate that there is no want of harmony in them, but to determine into which class the instant case falls.  All of the cases except the *Tuttle Case* were railroad crossing cases.  We cannot without making the opinion of unnecessary length fully detail all the facts in each of these cases; what we shall aim to do is to point out the character of the proof in each case for the purpose of comparison with the proof in the instant case so that we may know into which line of authorities this case upon the record submitted must fall.

In the case of *Tietz* v. *Railway Co.*, *supra*, the plaintiff testified that he stopped when 150 feet from the track and that he stopped again when the horse was 8 or 10 feet from the track and looked and listened, and that all he had on his mind was that he was going to cross the track.  He heard no signals.  His testimony was that he listened and was attentive to the matter of the railroad.  One of plaintiff's witnesses heard the rumbling of the train and got up from bed, went to the window and observed the train, he testified that he was listening for the signals and heard none, and that he "was listening real closely"; another witness was quite positive he heard no bell or whistle although he heard the noise of the train and went to the window and watched it.  There was other corrobo-

rative testimony. It was held that this testimony took the case to the jury. Each of the witnesses testified, it will be noted to listening and that their minds were on the train.

In the case of *McDuffie* v. *Railway Co., supra,* the plaintiff introduced witnesses who testified that they were giving attention to the approach of the engine and listening for the whistle but no whistle was sounded or bell rung. It was there said:

"This testimony is not negative in its character, but is positive and certain, and, if believed by the jury, warranted them in finding that the signals were not given."

The case of *Lonis* v. *Railway Co., supra,* grew out of the same accident, the proof was the same and the same result was reached by this court.

In the case of *Crane* v. *Railroad Co., supra,* witnesses who were so located as to see the approaching train and who were watching it testified that they heard no whistle and did not see the escape of steam which usually attends the blowing of the whistle. It was held that this testimony took the case to the jury. The witnesses had their attention attracted to the train.

While the opinion in *Cinadar* v. *Railway Co., supra,* does not quote the testimony because too voluminous, an examination of the record discloses that the witnesses who testified they did not hear the signals had their attention attracted to the train; some of them testified they heard its rumblings but heard no signals, while others were attentive to its coming because it was due 15 minutes before quitting time and was notice that their day's work was near an end and they were therefore attentive to its approach.

*Garland* v. *Railroad Co., supra,* was affirmed upon an equal division of the court. An examination of the record discloses that several witnesses were sworn

who were giving attention to the train, who heard the whistle blown, but did not hear the ringing of the bell, and one witness, who expected his wife would return on that train from Detroit, testified that he was paying special attention to the train, heard the whistle but did not hear any ringing of the bell.

In *Nichols* v. *Railway Co.*, *supra*, there were at least two witnesses who gave positive testimony that the signals were not given.

In *Hinkley* v. *Railway Co.*, *supra*, the carriage was stopped some distance from the track, and from that point on the occupants of the carriage continued to look and listen for a train. In this case, however, the only question raised was that of contributory negligence.

Let us now consider the line of cases relied upon by counsel for defendant. In the case of *Stewart* v. *Railroad Co.*, *supra*, the members of the train crew and disinterested witnesses testified to the giving of the signals. One witness testified to hearing the warning signal but did not hear the crossing signals given. Another witness testified that he did not hear the signals given. Both were reasonably near the accident but neither was listening for the signals nor attentive to the train. In addition to this there was somewhat confusing testimony from a young girl 11 years old. It was held that the testimony was not sufficient to take the case to the jury.

In the case of *Britton* v. *Railroad Co.*, *supra*, the members of the train crew testified to the giving of the signals. In addition to this a disinterested witness who watched the train coming and saw the accident also testified to giving the signals. It was held that, as against the positive testimony of six witnesses that the signals were given, the testimony of the plaintiff and his companion, who were in an inclosed vehicle and not in a situation to hear the sig-

nals, if given, that the signals were not given, did not arise to the dignity of evidence sufficient to take the case to the jury.

In *Bond* v. *Railway Co., supra,* there was testimony of seven witnesses that the signals were given. As against this was the testimony of plaintiff alone. She was partially deaf and her testimony in several regards was in conflict with that given upon a former trial. It was held that the verdict was against the weight of the evidence and should have been set aside and a new trial granted.

In *Tuttle* v. *Briscoe Manfg. Co., supra,* the witnesses testified they did not hear the driver of the truck blow his horn. The driver testified that he blew it. Upon the authority of the cases considered it was held that there was no legal testimony that the horn was not blown.

This analysis of the cases shows that in those relied upon by the plaintiff it was held that where the witnesses testified that they were listening, their attention was upon the train, its coming was upon their minds and they were paying heed to it, that then their testimony makes a case for the jury. This upon the theory that if they were listening, giving the train heed and attention, the probabilities are they would have heard the signals if they had been given. On the other hand the cases relied upon by the defendant's counsel hold that where the testimony does not show either that the witness was listening or otherwise giving heed and attention to the train, then testimony that he did not hear the signals does not take the case to the jury against positive testimony that the signals were given. This is upon the theory that it cannot be said that there is a probability that one not listening or giving any heed or attention to the train would have heard the signals if given. In the *Stewart Case* we cited with approval the case of *Culhane* v.

209—Mich.—8.

*Railroad Co.,* 60 N. Y. 133. We again quote from that case:

"It is proved by the positive oath of the two individuals on the engine, one of whom rang it, and by two others who witnessed the occurrence and heard the ringing of the bell. The two witnesses for the plaintiff merely say they did not hear the bell, but they do not say that they listened or gave heed to the presence or absence of that signal. The judge, in his charge, says they listened, but the statement is not borne out by the evidence. As against positive, affirmative evidence by credible witnesses to the ringing of a bell or the sounding of a whistle, there must be something more than the testimony of one or more that they did not hear it, to authorize the submission of the question to the jury. It must appear that they were looking, watching and listening for it, that their attention was directed to the fact, so that the evidence will tend to some extent to prove the negative."

In the instant case the witnesses were seated in this inclosed car; there is no testimony that any of them listened or were giving any heed or attention to the train or the track until the automobile rounded the curve in the highway. This was after the train had passed the whistling post and was about 475 feet from the crossing. The automobile was two years old as the testimony discloses, had chains on its rear tires, was driven on a rutty road covered with snow and ice with the usual noise accompanying its progress. Under such circumstances it cannot be said that there is a probability that the signals would have been heard if given, raising the negative testimony to the dignity of evidence sufficient to take the case to the jury against the positive testimony that the signals were given. The case falls within the line of cases cited by defendant's counsel.

The trial judge reserved the question of directing a verdict under the Empson act (Act No. 217, Pub. Acts 1915 [3 Comp. Laws 1915, § 14568]) and in a

carefully prepared opinion in which he reviewed at length the testimony and authorities concluded it was his duty to direct a judgment for the defendant notwithstanding the verdict for the plaintiff. With his conclusion we agree.

The judgment will be affirmed.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.