HOLSER *v.* CITY OF MIDLAND.

1. AUTOMOBILES—FIRE TRUCKS—RIGHT OF WAY.

A motorist on a city street must yield the right of way to a fire truck, if he knew or should have known in the exercise of ordinary prudence that the fire truck was approaching in response to a call (CL 1948, §§ 256.321, subd [b], 256.322, subd [a]; Midland General Traffic Ordinance, § 26).

2. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SIREN ON FIRE TRUCK—NEGATIVE TESTIMONY.

Negative testimony of witnesses in action by administratrix of estate of deceased motorist against city whose fire truck collided with decedent's car, that such witnesses did not hear the siren on the fire truck until instantly before or at time of collision is not enough .to support plaintiff's claim that her decedent was free from contributory negligence, where several witnesses some of whom were farther from the truck than decedent had heard the siren blow continuously from the time the fire truck was several hundred feet from the intersection until the collision.

3. SAME—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT—INTERSECTIONS—FIRE TRUCKS—SIREN—TRAFFIC LIGHT.

Southbound motorist who had unobstructed view of more than 400 feet west while he was over 70 feet north of intersection of city streets was guilty of contributory negligence as a matter of law, where he proceeded into intersection with eastbound fire truck approaching at speed of 40 miles an hour with its siren audible for a much greater distance than

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 5 Am Jur, Automobiles, §§ 40, 89, 294, 298, 760.
[1–4] Right of way of fire apparatus at street intersection. 21 ALR 978; 37 ALR 500; 47 ALR 601.
.Applicability of motor vehicle regulations to public officials or employees. 19 ALR 459; 23 ALR 418.
[2] 5 Am Jur, Automobiles, § 656.

separated the parties during their approach to the intersection within the range of the motorist's vision notwithstanding the traffic light indicated it was his turn to proceed (CL 1948, §§ 256.321, subd [b], 256.322, subd [a]; Midland General Traffic Ordinance, § 26).

4. SAME—FIRE TRUCKS—SPEED—RIGHT OF WAY.
The general rules of the road relating to speed and right of way do not apply to fire trucks answering a call (CL 1948, §§ 256.321, subd [b], 256.322, subd [a]; Midland General Traffic Ordinance, § 26).

Appeal from Midland; Holbrook (Donald E.), J. Submitted January 2, 1951. (Docket No. 8, Calendar No. 44,910.) Decided June 4, 1951.

Case by Janet Holser, administratrix of the estate of Erwin F. Holser, deceased, against the City of Midland and another for damages resulting from decedent's death. Verdict and judgment for plaintiff. Defendants appeal. Reversed.

*Heilman & Purcell, Gilbert A. Currie, Gilbert A. Currie, Jr.,* and *John D. Currie,* for plaintiff.

*Smith & Brooker* (*George J. Cooper,* of counsel), for City of Midland.

*Stanton, Montgomery, MacKenzie & Cartwright,* for Dow Corning Corporation.

REID, C. J. Plaintiff as administratrix of her deceased husband's estate filed her declaration, July 27, 1949, to recover damages for injuries received by her husband on October 8, 1948, in a collision between his automobile and a fire truck, at a stoplight intersection of streets, which injuries rendered him unconscious and caused his death, which took place on March 23, 1949. Plaintiff claims the accident was occasioned by the negligent conduct of servants

and agents of defendants. From a judgment on verdict for $46,000, defendants appeal.

Among other things defendants claim plaintiff's decedent was guilty of contributory negligence as a matter of law. In reviewing that question we must, in view of the verdict and the nature of the motion, assume as true the testimony, if any, fairly supporting plaintiff's claim that her decedent was free from contributory negligence.

On October 8, 1948, about 7:45 a.m., plaintiff's decedent, hereinafter referred to as Mr. Holser, was driving southerly on State street in the city of Midland, Michigan, approaching the intersection of Ellsworth street, at which intersection traffic was controlled by a red, amber and green signal light. State street crossed Ellsworth street at right angles and was of the width of 36 feet from curb to curb. The fire truck of defendant city of Midland was traveling east on Ellsworth street for several blocks before arriving at the intersection in question, at which the collision occurred. Ellsworth street was 29.4 feet from curb to curb west of the intersection and 24 feet from curb to curb, east of the intersection.

A fire alarm had been received by the Midland city fire department from the plant of the Dow Corning Corporation, which plant was located just outside of the limits of the city of Midland and near the plant of the Dow Chemical Company.

The Dow Corning Corporation had a contract (received in evidence) with the city of Midland for fire protection in addition to the fire protection maintained by Dow Corning Corporation in its own plant. Ellsworth street was the principal avenue of approach to the Dow Corning plant. A shift of employees occurred about the time of the accident in question and there were in consequence cars and pedestrians near the intersection.

Plaintiff claims that her decedent neither saw nor heard the fire truck before entering the intersection and entered the intersection on a green light.

There were witnesses to the collision.

There is no presumption of decedent's freedom from contributory negligence.

It was incumbent on plaintiff to prove by a preponderance of evidence that Holser was free from contributory negligence.

It is the duty of the driver of an automobile to be fairly alert as to potential dangers that may be readily seen or heard, especially when approaching a busy intersection of comparatively narrow streets. It is not enough that he be alert for things to be seen. He must also listen for it is a matter of common knowledge that there are at busy intersections very often sounds of automobile horns and the rumbling of wheels as well as screeching of tires caused by applied brakes and other sounds all indicative more or less of imminent danger. See *City of Lansing* v. *Hathaway,* 280 Mich 87, 89, in which we recite the duty of the driver to hear as well as to look:

"Defendant had a right, under permission of the green light, to cross the intersection unless, by the reasonable exercise of the senses of sight and hearing, he should have noticed or heard warning to the contrary."

See, also, *Bryan* v. *City of Chicago,* 371 Ill 64 (20 NE2d 37).

Plaintiff relies on the *City of Lansing Case, supra.*

| In the *City of Lansing Case*: | In the instant (*Holser*) *Case*: |
|---|---|
| (a) It was raining. | (a) It was clear. |
| (b) Standing cars and rain on the car side window obstructed Hathaway's view. | (b) Holser had an unrestricted and unlimited view of Ellsworth street after he was within 30 feet of the northerly curb line of Ellsworth. |
| (c) Hathaway received no warning of the approach of the fire truck. | (c) There was clear proof that the siren on the fire truck was audible. |
| (d) No radio was on. | (d) Holser's radio was on without any necessity therefor being shown. |

In the instant case, all the windows of the Holser car were closed except the right hand vent, which was open approximately one-half inch, that being the window nearest the approaching fire truck.

The duty to listen attentively is not decreased but rather increased by the fact that Holser had his radio on, as there is not shown any necessity for his listening to the radio or for the radio to be on and thus counteracting to some extent the noises indicative of danger.

The fire truck weighed 10,500 pounds, plus the weight of the 6 firemen who were upon it. Before the accident the siren on the truck was raised on a bracket to a height of 31 inches above the running board. Plaintiff did not plead nor claim that the siren was defective.

The truck driver on receiving the alarm on the day in question, left the fire hall on Ashman, turned in on Ellsworth and came easterly 7 blocks on Ellsworth to the intersection of State; the blocks are 306 feet long except that between State and George (apparently the first cross street west of State) the distance is 546½ feet.

The driver of the truck, Garno, and firemen Brown, Dull, Moore, Palmer and Carl Engwis, all

testified the siren was sounded during all the truck's progress on Ellsworth until after the accident.

Witnesses, stationed at various points and distances from the intersection of State and Ellsworth streets, heard the siren: Dwight Olsen (plaintiff's witness), sitting in his standing car south of the intersection, heard the siren although he had his windows closed except for 1 vent, and radio on. Robert Harcourt heard the siren blowing when he was 2 blocks south of Ellsworth on State street; he heard it continue to blow until the collision. Donald Beckwith, a pedestrian at the intersection, heard the fire siren blow a minute or two before the truck was in sight; he testified he saw it first when it was in the middle of the block west of State street going 40 to 50 miles per hour; he also testified that he saw the Holser car when it was 75 feet from the intersection, at which time the fire truck was 200 feet from the intersection, and he heard the siren blow continuously as the truck came down Ellsworth street. Colter Landis, traveling on Larkin street a block south of Ellsworth, heard the siren continuously blowing as he traveled a block and a half on that street to reach a parking lot one block from the intersection of Ellsworth and State streets. John R. Ladd heard the siren as he was at the corner of State and Larkin streets, which is one block south of State and Ellsworth streets. John Geary was standing on the south side of Ellsworth street 75 feet east of the intersection of State and Ellsworth streets and testified he heard the fire siren blow before he saw the fire engine; that when he first saw the fire truck it was about halfway between State and George streets; the siren blew continuously, it was a varying sound and he continued to hear it; first it would be high and then it would be low. Geary first saw the Holser car a second or two before the actual impact. Madeline Ritenour and her

husband both heard the siren, she when their vehicle was 1 block north of the intersection, and he when it was 2 blocks north of the intersection; she and her husband were traveling behind the Holser car and they both saw the fire truck, she when they were not quite to the driveway of the Buick garage and the fire truck was in front of the pumps, he when they were 90 feet from the intersection and the fire truck was about 95 feet from the intersection. (The southerly line of the Buick garage was 40.2 feet north of the north curb line of Ellsworth and 85.4 feet west of the west curb line of State street.)

Plaintiff to establish the inaudibility to Holser of the siren relies on 1 witness' opinion and upon 2 witnesses to the accident, Miss Lynch and the passenger in her car, Mrs. Bleicher.

Miss Lynch testified she was driving on the southerly side of Ellsworth street toward the intersection in question. She testified, "When I heard the fire siren I did not know the location of the fire truck, except that it was some place behind me." She testified she first heard the fire truck when she was 15 or 20 feet west (back) from the intersection and that she pulled toward the southerly curb of Ellsworth on hearing the siren and, "I had made a complete stop at the intersection when the truck went along."

The testimony of witness Lynch does not fairly support the plaintiff's claim that the siren could not have been heard seasonably by Holser.

Mrs. Bleicher, plaintiff's witness, a passenger in the car driven by Miss Lynch, testified that she heard the siren for the first time when the truck passed the car in which she was riding, after said car had come to a stop. Mrs. Bleicher did not testify she was listening for the siren.

Dr. Barstow, a witness for the plaintiff, gave an opinion as to the inaudibility to Holser of the siren. He had no knowledge from experimentation of the

distance the siren in question would carry, and his opinion when all is considered, is not sufficient as a contradiction of the several witnesses who testified they actually heard the siren.

The jury would be in error in accepting the negative testimony of witness Bleicher that she did not hear the siren until the fire truck was passing the car in which she was riding or about that time, as showing the inaudibility of the siren contrary to the positive testimony of the several witnesses above referred to, who actually heard the siren at so much greater distances.

"The striking of a clock, and the customary railroad signals, are familiar illustrations: The sound strikes the ear without securing mental attention, and immediately afterwards the person cannot say he heard it at all. If one under such circumstances swears that there was no sound, because if there had been he would have heard it, he testifies very carelessly, unless indeed he had his mind on the signal at the time, and was awaiting it. Such negative evidence is of very little value at the best." *Marcott v. Marquette, Houghton & Ontonagon Railroad Co.,* 49 Mich 99, 102.

We have further ruled:

"This analysis of the cases shows that in those relied upon by the plaintiff it was held that where the witnesses testified that they were listening, their attention was upon the train, its coming was upon their minds and they were paying heed to it, that then their testimony makes a case for the jury. This upon the theory that if they were listening, giving the train heed and attention, the probabilities are they would have heard the signals if they had been given. On the other hand the cases relied upon by the defendant's counsel hold that where the testimony does not show either that the witness was listening or otherwise giving heed and attention to the

train, then testimony that he did not hear the signals does not take the case to the jury against positive testimony that the signals were given. This is upon the theory that it cannot be said that there is a probability that one not listening or giving any heed or attention to the train would have heard the signals if given. In the *Stewart Case* (*Stewart* v. *Michigan Central Railroad Co.*, 119 Mich 91) we cited with approval the case of *Culhane* v. *Railroad Co.*, 60 NY 133. We again quote from that case:

" 'It is proved by the positive oath of the 2 individuals on the engine, 1 of whom rang it, and by 2 others who witnessed the occurrence and heard the ringing of the bell. The 2 witnesses for the plaintiff merely say they did not hear the bell, but they do not say that they listened or gave heed to the presence or absence of that signal. The judge, in his charge, says they listened, but the statement is not borne out by the evidence. As against positive, affirmative evidence by credible witnesses to the ringing of a bell or the sounding of a whistle, there must be something more than the testimony of 1 or more that they did not hear it, to authorize the submission of the question to the jury. It must appear that they were looking, watching and listening for it, that their attention was directed to the fact, so that the evidence will tend to some extent to prove the negative.'

"In the instant case the witnesses were seated in this inclosed car; there is no testimony that any of them listened or were giving any heed or attention to the train or the track until the automobile rounded the curve in the highway. This was after the train had passed the whistling post and was about 475 feet from the crossing. The automobile was 2 years old as the testimony discloses, had chains on its rear tires, was driven on a rutty road covered with snow and ice with the usual noise accompanying its progress. Under such circumstances it cannot be said that there is a probability that the signals would have been heard if given, raising the negative testi-

mony to the dignity of evidence sufficient to take the case to the jury against the positive testimony that the signals were given. · The case falls within the line of cases cited by defendant's counsel.

"The trial judge reserved the question of directing a verdict under the Empson act (PA 1915, No 217 * [CL 1915, §. 14568]) and in a carefully prepared opinion in which he reviewed at length the testimony and authorities concluded it was his duty to direct a judgment for the defendant notwithstanding the verdict for the plaintiff. With his conclusion we agree." *Lambert* v. *Minneapolis, St. Paul & Sault Ste. Marie Railway Co.,* 209 Mich 107, 113–115.

See, also, *Hudson* v. *Grand Trunk Western Railway Co.,* 227 Mich 1 (23 NCCA 682).

We cite further:

"Several witnesses testified positively that the bell was ringing. Plaintiff testified:

" 'I did not hear any bell ringing. * * *

" '*Q.* Could you have heard a bell ringing if there had been one ringing?

" '*A.* I imagine I could, but I couldn't swear to it because the engine was steaming.

" '*Q.* But you heard no bell?

" '*A.* No, I heard no bell.'

"Another witness testified:

" 'Mr. Hinderer's attention was called to the fact that the bell was ringing. He said the bell was not ringing and it was still ringing. I said: "Can't you hear it ringing?" That was after the accident and I am positive it was ringing all the time.'

"Against the positive testimony is merely negative testimony which does not make an issue of the fact." *Hinderer* v. *Ann Arbor Railroad Co.,* 237 Mich 232, 235 (26 NCCA 871).

"The police driver testified positively that the signal was sounding audibly and continuously. He

---

* See, as amended, CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1949 Cum Supp § 27.1461 *et seq.*).—Reporter.

was corroborated by a disinterested witness who testified on the side of the plaintiffs. In the face of such evidence, the testimony of other witnesses that they heard no signal must be rejected. 'Negative testimony of this character, by those who did not hear, as against the positive, affirmative testimony of witnesses who did hear, and who were in a position to know, is not enough to make out a charge of negligence.' *Anspach* v. *Philadelphia & Reading Railway Co.*, 225 Pa 528, 532 (74 A 373, 374, 28 LRA NS 382). This principle is well established. *Stuckwish* v. *Hagan Corporation*, 316 Pa 513 (175 A 381); *Fearn* v. *City of Philadelphia*, 320 Pa 156 (182 A 534), and cases there cited." *Reilly* v. *Philadelphia*, 328 Pa 563, 568 (195 A 897, 900).

In the case at bar, there is convincing and undisputed testimony as to the oscillating light on front of the truck being on during the progress of the truck. The oscillating light was high up on the front of the truck, cut a figure eight and it seems to have been well calculated to attract the attention of any person who glanced at the truck.

The pavement was wet; rain had fallen earlier in the day. The north curb line of Ellsworth east of State street is about 4 feet farther south than it is west of State street. Garno testified that on the east of State there were 6 or 7 cars parked on the north side of Ellsworth. (He is contradicted on that point by witnesses Geary and Bleicher.) If so, the driver of the truck, who was driving on the northerly side of Ellsworth street, would be obliged to turn the truck on an angle to his right in the intersection to avoid the cars on the north side of Ellsworth east of State. In any event, the jog of the northerly curb line of Ellsworth street required a swerve to the right on the part of the truck. The fire truck was driven about 39 or more miles an hour with no deceleration on approaching State street.

Plaintiff claims the driver of the fire truck in question, Garno, was guilty of negligence in causing this accident. Garno was, according to his testimony, driving at about 35 miles per hour, driving east on Ellsworth street, and on concluding the intersection was clear, he accelerated his speed. Other witnesses testified to a greater rate of speed and at least one witness ventured a top estimate of 50 miles per hour as the speed of the fire truck coming along Ellsworth street. It is testified to by several witnesses including the driver and disputed by no witness that the fire truck was swerved toward the right during its progress in the intersection.

In view of the narrowness of the 2 streets and of the fact that there were cars on Garno's right as he was approaching State street, when there was only a total width of 29.4 feet west of Ellsworth, the fact of Garno's swerving to his right as he approached the intersection in question of State street, either because of the cars which he saw parked on the northerly side of Ellsworth across and easterly of State street or because of the jog in the curb line or for some unexplained reason and in view of all the circumstances including congested traffic at the intersection, we conclude that there was a jury question as to whether in driving so rapidly on such a narrow street without deceleration approaching such an intersection, Garno drove the fire truck "with due regard for the safety of all persons using the highway," as was his duty under the statute hereinafter cited. Garno testified his truck would tip over if suddenly swerved:

"Take a 6-ton truck and roll it at 38 miles an hour, if you make a sharp turn with that truck you would immediately roll. There is nothing to hold it to the road, your load is on the top, it is top heavy and it is going to roll. You would just have 6 men all over, that is all."

The siren was heard by so many witnesses at various points and in various directions, some of them on the same street that Mr. Holser was on and at a further distance, that the conclusion seems irresistible that Mr. Holser should have heard the siren or that he did hear the siren but failed to heed the warning.

The overwhelming preponderance of testimony of several witnesses not shown to be interested or unworthy of belief discloses that the deceased seasonably heard or should have heard the siren of the fire engine and an additional duty was placed upon him under such circumstances to exercise greater precaution to observe conditions of traffic at the intersection than would be necessary if there were no fire engine approaching in the vicinity. It was therefore, under such circumstances, his duty before entering an intersection with the green light not only to observe traffic in the immediate vicinity of such intersection but also to seek, as an ordinarily prudent driver would do, by observance, to determine whether the fire engine was approaching the intersection, at a speed and in such a manner that it could under any circumstances strike his vehicle. It was Mr. Holser's duty and an ordinarily reasonable prudent person must be expected under such circumstances to exercise additional precaution to observe and anticipate what could happen and was likely to happen, being bound to know that a fire engine has at least a qualified right in law to proceed against and through a red light.

Holser on approaching the intersection in question had an unobstructed view up Ellsworth for 432 feet from a point on State 77 feet north of the center line of Ellsworth street. As Holser proceeded southerly, the distance up Ellsworth that Holser could see increased. There is testimony that as Holser was proceeding at about 8 or 10 miles an

hour, at a point about 37 feet north of the center line of Ellsworth, he accelerated his speed into the intersection and it seems that by the time he entered the intersection the light was green for him. His hearing and eyesight were good.

Holser continued into the intersection and the rear of his car was struck when it had just about crossed the center line of Ellsworth. He died as a result of the injuries received by him in the collision.

The following is part of subdivision (b) of CL 1948, § 256.321 (Stat Ann 1947 Cum Supp § 9.1581), as it stood at the time of the accident:

"The driver of a vehicle upon a highway shall yield the right-of-way to ambulances, police and fire department vehicles when the latter are operated upon official business and the drivers thereof sound audible signal by bell, siren or exhaust whistle. This provision shall not operate to relieve the driver of a police or fire department vehicle from the duty to drive with due regard for the safety of all persons using the highway."

The following statute was in force at the time of the accident in question in the instant case:

"Upon the approach of any police or fire department vehicle giving audible signal by bell, siren or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position as near as possible, and parallel to the right-hand edge or curb of the highway, clear of any intersection of highways, and shall stop and remain in such position unless otherwise directed by a police or traffic officer until the police or fire department vehicle shall have passed." CL 1948, § 256.322, subd (a) (Stat Ann 1947 Cum Supp § 9.1582).

Section 26 of the general traffic ordinance of the city of Midland is as follows:

"Right of way for police or fire vehicles.

"(a) Upon the approach of any vehicle of the fire department, police department or police authorized vehicles, when on an emergency call sounding a siren or bell, all operators of other vehicles shall immediately drive as closely as possible to the right-hand curb and stop and shall not follow any vehicle or apparatus of the fire department or police department until same shall be at least 500 feet away or has stopped."

Under all the circumstances of this case as disclosed by the testimony, we consider that it was the duty of Mr. Holser to give heed to the siren, look in its direction to the west of the intersection, notice the flashing oscillating light and not enter the intersection ahead of the fire truck.

The jury evidently considered that the sound of the siren was not such that Mr. Holser in the exercise of ordinary diligence would have heard it. Such verdict is not supported by the evidence. Plaintiff failed to show her decedent to be free from contributory negligence.

The other claimed errors need not be discussed in view of our decision on plaintiff's decedent's contributory negligence.

The judgment appealed from is set aside. The case is remanded to the trial court with instruction to enter a judgment for both defendants of no cause of action. Costs to defendants.

DETHMERS, J., concurred with REID, C. J.

SHARPE, J. (*concurring*). I concur in the opinion of Chief Justice REID on the ground that plaintiff's decedent was guilty of contributory negligence as a matter of law.

The following statutes and traffic ordinance are factors in deciding the issue in this case:

CL 1948, § 256.321 (Stat Ann 1947 Cum Supp § 9.1581), provides in part:

"(b) The driver of a vehicle upon a highway shall yield the right-of-way to ambulances, police and fire department vehicles, when the latter are operated upon official business and the drivers thereof sound audible signal by bell, siren or exhaust whistle. This provision shall not operate to relieve the driver of a police or fire department vehicle from the duty to drive with due regard for the safety of all persons using the highway."

CL 1948, § 256.322 (Stat Ann 1947 Cum Supp § 9.1582), provides in part:

"(a) Upon the aproach of any police or fire department vehicle giving audibile signal by bell, siren or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position as near as possible, and parallel to the right-hand edge or curb of the highway, clear of any intersection of highways, and shall stop and remain in such position unless otherwise directed by a police or traffic officer until the police or fire department vehicle shall have passed."

Section 26 of the general traffic ordinance of the city of Midland provides:

"Right of way for police or fire vehicles.

"(a) Upon the approach of any vehicle of the fire department, police department or police authorized vehicles, when on an emergency call sounding a siren or bell, all operators of other vehicles shall immediately drive as closely as possible to the right-hand curb and stop and shall not follow any vehicle or apparatus of the fire department or police department until same shall be at least 500 feet away or has stopped."

Under the above it was the duty of plaintiff's decedent to yield the right of way to the fire depart-

ment if he knew or should have known in the exercise of ordinary prudence that the fire truck was approaching in response to a call. In the case at bar decedent was approaching from the north and the fire truck was approaching from the west. When decedent was 70 feet north of the intersection he could have seen a vehicle approaching from the west when it was at least 200 feet from the intersection. There is positive evidence from witnesses east and south of the intersection that they heard the siren on the fire truck. Grover Ritenour and wife were traveling south on State street at the time of the collision. Mr. Ritenour heard the siren when he was 2 blocks north of the intersection and Mrs. Ritenour when they were 1 block north of the intersection; he also heard the siren after the collision. He also testified that when he was 90 feet north of the intersection, the fire truck was 95 feet west of the intersection and plaintiff's decedent was just entering the intersection with the green light in his favor.

Plaintiff offered evidence of witnesses who were in the vicinity of the intersection and did not hear the siren or hear it until the fire truck was within 100 feet of the intersection.

In the case at bar it clearly appears that the siren on the fire truck was in operation while approaching the intersection and was not discontinued until after the collision. The negative testimony of witnesses that they did not hear the siren is not sufficient to make an issue of fact as to whether the siren could be heard a sufficient distance to warn plaintiff's decedent that a fire truck was approaching.

In 66 ALR 1538, it is stated:

"This rule is recognized in Michigan where it is held that where the testimony of witnesses on the part of the plaintiff does not show that they were listening or otherwise giving heed and attention to an oncoming train, testimony that they did not hear

the signals does not take the case to the jury, where there is positive testimony by other witnesses, some of them disinterested, that signals were given. *Stewart* v. *Michigan Central R. Co.* (1898), 119 Mich 91; *Britton* v. *Michigan Central R. Co.* (1899), 122 Mich 359; *Tuttle* v. *Briscoe Manfg. Co.* (1916), 190 Mich 22 (12 NCCA 909) (truck); *Lambert* v. *Minneapolis, St. Paul & Sault Ste. Marie R. Co.* (1920), 209 Mich 107."

See, also, *Colborne* v. *Detroit United Railway,* 177 Mich 139.

The record shows that when plaintiff's decedent was 77 feet north of the center of the intersection he had an unobstructed view to the west of 432 feet from which point the fire truck would have been clearly visible to anyone who looked as well as being audible to listeners. In the case at bar we must conclude that plaintiff's decedent could have seen and heard the approaching fire truck in sufficient time to stop his car and avoid a collision. The fact that plaintiff's decedent had the green light in his favor did not give him the statutory right of way. The general rules of the road relating to speed and right of way no not apply to fire trucks answering a call.

Plaintiff's decedent was guilty of contributory negligence as a matter of law in entering the intersection with a fire truck approaching from his right traveling at a speed of 40 miles per hour or more and then at a distance of 95 to 100 feet west of the intersection. The trial court was in error in refusing to grant defendants' motion for a directed verdict made at the close of all testimony.

The judgment is reversed without a new trial. Defendants may recover costs.

BOYLES, NORTH, DETHMERS, BUTZEL, CARR, and BUSHNELL, JJ., concurred with SHARPE, J.