MOREAU *v.* GRANDMAISON.

NEGLIGENCE—AUTOMOBILES—PERSONAL INJURIES—SOUNDING HORN —EVIDENCE—SUFFICIENCY.

>  Where plaintiff, who was riding a bicycle behind a truck, was run down from behind and injured by defendants' automobile when it turned out to pass the truck, testimony by plaintiff and a companion that they did not hear defendants' horn sounded but no testimony that they were listening or giving any heed to vehicles that might be coming from behind, *held,* insufficient to take said question to the jury, in the face of positive testimony by defendants that it was sounded. MCDONALD, BIRD, and MOORE, JJ., dissenting.

Error to Bay; Houghton (Samuel G.), J. Submitted June 9, 1922. (Docket No. 57.) Decided October 2, 1922.

Case by Mitchell Moreau, an infant, by his next friend, against David L. Grandmaison and others for

personal injuries.    Judgment for defendants.    Plaintiff brings error.    Affirmed.

*Kinnane, Black & Leibrand,* for appellant.

*Robert H. Lane,* for appellees.

BIRD, J. (*dissenting*).    Plaintiff sued defendants to recover damages which he suffered while riding his bicycle in Bay City on May 27, 1920.    From an adverse verdict by a jury plaintiff assigns error.    Plaintiff was an 18-year old school boy.    On the day in question he was on his way to school in company with Ralph Mattison, another boy about his age.    Both boys were riding bicycles.    While riding west on Marquette street they came up behind a truck which was moving at the rate of 8 or 10 miles an hour, and followed along behind it—a little to the right of the truck.    While going along in this way defendants, Roy and Estella Grandmaison, came from the rear in an automobile and ran into plaintiff.    He fell off his bicycle in front of the car and the front wheel ran over him and injured him quite badly, but not permanently.

It was the claim of plaintiff that defendants drove up behind and into him without giving any warning, throwing him off his wheel to the ground in front of the moving car.    Defendants' version of the collision was that when they approached the truck they saw the boys behind it—a little to the right.    When they commenced to turn to the left to pass the truck plaintiff moved over toward the left side of the truck; that when he reached the left side of the truck he took hold of the truck and his bicycle either skidded or got caught in the street car track and he was thrown off in front of the wheels of defendants' automobile.    The automobile was stopped before the rear wheel ran over him.    These conflicting contentions were tried out

before the jury and they returned a verdict for defendants.

1. Plaintiff assigns error because defendants' witness, Mable Roland, was permitted to testify that she and her husband passed the truck about one thousand feet east of the point of collision and saw the boys behind the truck hanging on to it. Plaintiff testified that he did not have hold of the truck. A thousand feet is a pretty short distance for a bicycle or automobile when traveling at an ordinary gait. If the boys were holding on to the truck a thousand feet east of the point of collision it would have a tendency to corroborate the testimony of Estella Grandmaison that plaintiff had hold of the truck when they approached it. No error was committed in admitting the testimony.

2. The trial court instructed the jury that:

"There isn't any testimony in this case for you to consider that a signal was not given, a warning signal."

Plaintiff says this was error in view of the fact that plaintiff testified that he had no recollection of hearing the horn and his companion testified: "I did not hear the auto sound its horn." In giving this instruction the court made no reference to the testimony of the boys and defendants' counsel does not discuss it or make any reference to it in his brief. Whether the court charged the jury in this way intending to make a distinction between positive and negative testimony, the charge does not disclose. No other theory suggests itself to us to account for this part of the charge. The cases bearing on this question are reviewed by Mr. Justice FELLOWS in the late case of *Lambert* v. *Railway Co.*, 209 Mich. 107. This situation differs from most of the cases, in this: That the signal here was one that the boys were in a position to hear and one in which they were interested. They

were interested because it involved their personal safety. If the horn was sounded, it was only a few rods distant. In most of the cases in which this question has arisen the signals involved were train signals and the parties had no interest in them, or were indifferent to them. Their personal safety was not involved. Where one's personal safety is involved his attention is keener.

"Weight of negative testimony may be augmented by the circumstance that the witness had a reason for observing whether the fact occurred or not; self-protection for example." 17 Cyc. p. 805.

Defendant Roy Grandmaison testified that as he pulled out to pass the truck he tooted his horn. Plaintiff testified that he had no recollection of hearing the horn. His companion testified: "I did not hear the auto sound its horn." In view of this testimony and the circumstances under which the occurrence took place we think the question as to whether the horn was sounded was one for the jury. The question as to whether the horn was sounded was an important element in the case and, undoubtedly, affected the result. Had plaintiff heard the horn it is quite likely he would have taken measures to protect himself against the collision which subsequently followed.

3. Defendant Estella Grandmaison testified they were about five feet from the truck when they started to turn out to pass it. Later she changed this to fifteen feet. Counsel complain that had not defendants' counsel prompted her with leading questions she would not have corrected her statement. If the witness concluded that she was wrong she had a right to correct her testimony. Both of her statements were before the jury and they had a right to accept either or to reject both of them. *Kelly* v. *Freedman,* 56 Mich. 321; *Watson* v. *Watson,* 58 Mich. 507; *People* v. *Hansen,* 183 Mich. 565.

220—Mich.—16.

4. Plaintiff requested the court to charge as follows:

"If defendants drove up behind him (plaintiff) in an automobile and ran into the rear of his bicycle precipitating the collision which resulted in the injury, then the defendants would be liable."

Counsel say that the court refused this request, but charged as follows:

"If the defendants drove up behind the truck and continued riding up behind the truck, and ran into the boy coming from behind him, then you may consider whether or not he was guilty of negligence."

Counsel's criticism is that they were entitled to a direct charge that if defendants drove up behind plaintiff and ran into his bicycle from the rear that he would be guilty of negligence. Counsel do not call our attention to the following excerpt from the charge:

"Now I say to you that is the one question for you to determine in this case, How did the boy get under the wheel of the automobile? *If the automobile proceeded straight along and ran right into the boy, behind this truck, that would be negligence, driving the car.*"

As this excerpt from the charge was in compliance with plaintiff's request we think they have no cause to complain.

Other excerpts from the charge are set apart and error assigned upon them. When they are read in connection with the charge as a whole there appears to be no error in them. For the error pointed out the judgment should be reversed and a new trial ordered, with costs to plaintiff.

McDonald and Moore, JJ., concurred with Bird, J.

Fellows, C. J. In the case of *Lambert* v. *Railway Co.*, 209 Mich. 107, cited by my Brother Bird, after a review of the two lines of authorities, this court said:

"This analysis of the cases shows that in those relied upon by the plaintiff it was held that where the witnesses testified that they were listening, their attention was upon the train, its coming was upon their minds and they were paying heed to it, that then their testimony makes a case for the jury. This upon the theory that if they were listening, giving the train heed and attention, the probabilities are they would have heard the signals if they had been given. On the other hand the cases relied upon by the defendant's counsel hold that where the testimony does not show either that the witness was listening or otherwise giving heed and attention to the train, then testimony that he did not hear the signals does not take the case to the jury against positive testimony that the signals were given. This is upon the theory that it cannot be said that there is a probability that one not listening or giving any heed or attention to the train would have heard the signals if given."

In that case several witnesses testified that the crossing signal was given, several witnesses testified that they did not hear it, but did not testify that they were listening. We there affirmed a judgment for defendant entered *non obstante veredicto* on the ground that there was no testimony that the statutory signal was not given; that the negative testimony did not take that question to the jury or rise to the dignity of evidence of that fact. In the instant case both defendants swear positively that the horn was sounded and the plaintiff does not testify that he was listening or giving any heed to what vehicles might be coming from behind, nor does his boy companion Mattison give any such testimony. All that either of them says is that he did not hear the horn sounded. This is not sufficient under all of our holdings.

I think the judgment should be affirmed.

WIEST, CLARK, SHARPE, and STEERE, JJ., concurred with FELLOWS, C. J.