HART *v.* GRAND TRUNK WESTERN RAILROAD CO.

STREW *v.* SAME.

1. RAILROADS—CROSSINGS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
   In actions by motorist and passenger against railroad company whose engine was pushing tank cars on spur track crossing city street at a 20-degree angle, judgment is affirmed (1) because defendant was not negligent (WIEST, BUSHNELL and SHARPE, JJ.); (2) because plaintiffs were guilty of contributory negligence as a matter of law (NORTH, C. J., and FEAD, J.).
   BUTZEL and TOY, JJ., dissenting.

2. SAME—QUESTIONS FOR JURY.
   Evidence that plaintiff in action against railroad company was not listening for approach of train and did not hear or see any signals given is insufficient to take questions of negligence and contributory negligence to jury, where there is positive testimony that signals were given.

Appeal from Bay; Houghton (Samuel G.), J. Submitted October 8, 1936. (Docket Nos. 57, 58; Calendar Nos. 38,934, 38,946.) Decided December 28, 1936.

Separate actions of case by Roy Hart and William Strew against Grand Trunk Western Railroad Company for damages for personal injuries and motor vehicle damaged in a railroad crossing accident. Cases consolidated for trial and appeal. Verdicts for plaintiffs. Judgments for defendant *non obstante veredicto*. Plaintiffs appeal. Affirmed.

*Leibrand & Leibrand,* for plaintiffs.

*H. V. Spike, William W. Macpherson* and *Gilbert W. Hand,* for defendant.

BUSHNELL, J. These two railroad and highway intersection cases were consolidated and tried as one. The jury rendered a verdict for Roy Hart, the driver of the automobile involved, in the sum of $175 and for William Strew, his passenger, in the sum of $1,000. Seasonable motions were made by defendant for directed verdicts; subsequently the court granted defendant's motions for judgment *non obstante veredicto* from which plaintiffs appeal.

The accident out of which the lawsuits arose occurred where a spur track of defendant's railroad crosses Marquette avenue in Bay City. On November 10, 1934, sometime after 10 o'clock in the evening, plaintiff Hart, who was unacquainted with the city, was driving his Ford coupe northerly on Marquette avenue. Riding with him was his uncle, William Strew. Defendant's train was approaching this crossing from the northeast, at an angle with the road of about 20 degrees. Several oil tank cars were ahead of the engine which was moving them towards the intersection at a speed of about 9 or 10 miles an hour, but before reaching Marquette avenue, the train slowed down to about two or three miles per hour. Brakeman Greanya, who was riding the forward car with Brakeman Green, both of whom were carrying lighted lanterns, got off the train and ran ahead to the middle of the crossing where he remained, swinging his lantern across the highway. He testified that he saw plaintiff's automobile about 400 or 500 feet away and said that when he discovered it was not going to stop, he jumped back and behind the tank car in order to avoid being struck by the automobile. Both he and Green gave an emergency stop signal to the engineer and the testimony of the railroad crew shows that the train did stop within a distance of four or five inches.

Plaintiffs say they knew nothing of the proximity of the train, saw no signals and heard neither bell nor whistle, and that Hart's auto was struck by the tank car. However, the members of the train crew and disinterested witnesses testified that the bell was ringing, that the lanterns were visible, and that Hart drove his automobile into the end of the tank car. Strew was injured and for sometime suffered from numbness near the left eyebrow and from double vision. His doctor believed at the time of the trial that he might eventually recover his normal sight. The automobile was demolished.

An ordinance of Bay City requires the continuous ringing of a locomotive bell as trains approach a crossing, but forbids the sounding of whistles within the city, "excepting necessary brake signals and for such other signals required by law as shall be absolutely necessary to prevent injuries to person and property."

The trial judge held that judgments should be entered for defendant because of plaintiff Hart's contributory negligence and because of the imputation of this negligence to his passenger, Strew.

Three questions are raised on appeal, two of which are not argued in the briefs and therefore must be considered as having been waived.

However, for the benefit of the profession, we will say that the question pertaining to the claim that the court lost jurisdiction to enter a judgment *non obstante veredicto* by its failure to make a decision on defendant's motion for more than 60 days after its submission, must be answered adversely to appellant because of our holding in *Stepanian* v. *Moskovitz,* 232 Mich. 630; a discussion of this question is given on pages 638 and 639 of that opinion.

The remaining and controlling question, according to appellants' brief, is that of plaintiffs' con-

tributory negligence. But there must be proof of negligence on the part of defendant before there can be any question of contributory negligence on the part of plaintiffs.

The negligence asserted in appellants' brief "consisted of defendant pushing its tank cars across Marquette avenue on a dark night without the use of lights, bell or whistle." Plaintiffs' proof on this subject is entirely negative. Neither of the plaintiffs was aware of the existence of the crossing until the collision occurred, and while they testified that they were listening, their answers indicate that they were not listening for anything in particular. Each member of the train crew and disinterested witnesses affirmatively stated that the headlight of the engine was lighted and while the tank cars were higher from the ground than the headlight, the light still could be seen; they also testified that the engine bell was ringing and that the brakeman on the first car and the one who guarded the crossing were signaling with their lanterns.

As indicated in the annotations found in 66 A. L. R. 1538, *et seq.,* we have repeatedly held:

"That where the testimony of witnesses on the part of the plaintiff does not show that they were listening or otherwise giving heed or attention to an oncoming train, testimony that they did not hear the signals does not take the case to the jury, where there is positive testimony by other witnesses, some of them disinterested, that signals were given. *Stewart* v. *Railroad Co.,* 119 Mich. 91; *Britton* v. *Railroad Co.,* 122 Mich. 359; *Tuttle* v. *Briscoe Manfg. Co.,* 190 Mich. 22 (12 N. C. C. A. 909); *Lambert* v. *Railway Co.,* 209 Mich. 107."

Defendant says, and we agree, that the *Lambert Case, supra,* is a leading one on the subject. We

repeat a quotation from page 113 of that opinion, which is also found in *Moreau* v. *Grandmaison,* 220 Mich. 238:

"This analysis of the cases shows that in those relied upon by the plaintiff it was held that where the witnesses testified that they were listening, their attention was upon the train, its coming was upon their minds and they were paying heed to it, that then their testimony makes a case for the jury. This upon the theory that if they were listening, giving the train heed and attention, the probabilities are they would have heard the signals if they had been given. On the other hand the cases relied upon by the defendant's counsel hold that where the testimony does not show either that the witness was listening or otherwise giving heed and attention to the train, then testimony that he did not hear the signals does not take the case to the jury against positive testimony that the signals were given. This is upon the theory that it cannot be said that there is a probability that one not listening or giving any heed or attention to the train would have heard the signals if given."

The evidence does not show any negligence on the part of defendant. Therefore we affirm the judgment for defendant without determining the question of plaintiffs' contributory negligence. We content ourselves with reference to the following applicable authorities on contributory negligence which were also cited by the trial judge: *Haney* v. *Troost,* 242 Mich. 693; *Stone* v. *Railway Co.,* 248 Mich. 538; *Richman* v. *Railway Co.,* 254 Mich. 607; *Angstman* v. *Wilson,* 258 Mich. 195 (31 N. C. C. A. 1); *Depotty* v. *City of Detroit,* 258 Mich. 657; *Gardinear* v. *Railway Co.,* 265 Mich. 286.

The judgment for defendant is affirmed in each case, with costs.

WIEST and SHARPE, JJ., concurred with BUSH-
NELL, J.

FEAD, J., concurred on ground plaintiffs were
guilty of contributory negligence as a matter of law.

NORTH, C. J., concurred with FEAD, J.

BUTZEL, J. (*dissenting*). I am not in accord with
the foregoing opinion. Inasmuch as the motion *non
obstante veredicto* was granted against plaintiffs, we
must view their testimony in the most favorable
light. There was ample testimony to make the is-
sues of negligence and contributory negligence jury
questions.

Witnesses are agreed that the collision occurred
on a dark night and that the street was not il-
luminated. It did not occur at a railroad station
nor at a crossing where there was a series of tracks,
but happened on a side track which was flush and
even with the street without any elevation. The
testimony is not contradicted that the only warning
sign was an old T-shaped wooden sign some 14 feet
in height facing in the opposite direction from
which plaintiffs were coming. The sign was off the
road up near the sidewalk on the left side of plain-
tiffs. It is also uncontradicted that plaintiffs were
wholly unfamiliar with the road and did not know
of the side track. There was further testimony on
the part of plaintiffs that the night was misty as
well as very dark; that plaintiff was driving from
20 to 25 miles an hour and that a tank car struck the
car of Hart, and his car did not run into the tank
car. The photographic exhibit of the car taken
after the collision indicates that Hart's car was
struck on the side near the front end, the glass of
one headlight, one of the front fenders and the

bumper apparently being uninjured. There is further testimony that the headlight of the locomotive was facing in the opposite direction from the street. There is no question but that it was in back of the tank cars which were being pushed across the street when the accident occurred and that the cupolas of the cars partly shut off the light.

There was ample testimony of a positive nature that the bell was not rung constantly in accordance with the city ordinance of Bay City, which was introduced into evidence. Witness Hart testified as follows:

"*Q.* As you approached the place where this collision happened, were there any rings of a locomotive bell?

"*Mr. Macpherson:* I object to that, asking for a conclusion. I do not mind him asking the witness what his sense of hearing registered, but to say a bell was ringing or not is purely a question for the jury.

"*Q.* Your hearing is good, is it not?

"*A.* It's supposed to be.

"*Q.* Are you familiar with the sound of a locomotive bell?

"*A.* Yes, sir.

"*Q.* How far can you ordinarily hear a locomotive bell ringing?

"*A.* Why, around where they are switching in the yard in the plant you can hear them sometimes 80 rods there, them bells ringing.

"*Q.* Under conditions as they were that night how far could you hear a locomotive bell ringing?

"*A.* I could have heard one ringing if there had been one ringing in that distance.

"*Mr. Macpherson:* I object to that.

"*Mr. Leibrand:* That is perfectly proper, if your honor please.

"*Mr. Macpherson:* There might have been one and he not be listening to it.

"*The Court:* How far could he hear one under ordinary conditions as they were that night?

"*Mr. Macpherson:* If he had been listening.

"*The Witness:* A man could hear one three or four blocks.

"*Q.* As you drove along Marquette street within three or four blocks of the place where the accident occurred were you listening?

"*A.* Yes.

"*Q.* And was a locomotive bell ringing?

"*A.* No, sir.

"*Mr. Macpherson:* I will object to that as asking for a conclusion.

"*The Court:* Did you hear one?

"*The Witness:* No, sir. * * *

"*Q.* Now you said you were listening for a bell as you drove along there?

"*A.* No, I didn't say I was listening for a bell.

"*Q.* Didn't you say you were listening for a bell as you went along there?

"*A.* I was listening. You could be listening for anything.

"*Q.* What were you listening for?

"*A.* Well, for anything in particular. I had my mind on driving, of course.

"*Q.* What did you have particularly in mind?

"*A.* Well, you could listen for a car behind you, or somebody coming on the side street blowing a horn, or train or anything."

Witness William Essex, a wholly disinterested witness, who with his wife was driving immediately behind the car of plaintiffs, testified as follows:

"*Q.* Were you listening for any sounds or noises there might be?

"*A.* Nothing in particular, any more than I ever do; I always am cautious when I am driving.

"*Q.*  Whether or not you heard a bell, a locomotive bell ringing?

"*Mr. Macpherson:*  I object to that as incompetent, immaterial and irrelevant, no evidence of negligence on our part.  He said he wasn't paying any particular attention.

"*The Court:*  He may answer what he heard or observed, if anything.

"*A.*  I didn't hear no bell.

Mrs. Essex also testified that she did not hear locomotive bells ringing.  William Strew, the other plaintiff, testified as follows:

"*Q.*  As you approached the railroad crossing did you hear the ringing of any locomotive bells?

"*A.*  No, sir.

"*Q.*  Would you say whether or not any locomotive bells were ringing?

"*A.*  If there had been a locomotive bell ringing, I would have heard it.  *   *   *

"*Q.*  What was the condition of your hearing prior to that accident?

"*A.*  Good."

It is true that defendant produced witnesses who testified that bells were rung.  One of these witnesses was a railroad man who had been in the switching service of another railroad for 23 years.  However, a fair jury question was presented and it is not within our province on this appeal to weigh the evidence in order to determine whether the verdict was against the great preponderance of the testimony.  When witnesses testify that they did not hear a bell, that they were unfamiliar with the road and that they could have heard a railroad bell ringing for three blocks if one had been rung, that their hearing was good, that they heard no locomotive bell ringing and did not know that there was a

railroad track nearby, but that they were listening either for cars behind them or a car coming out of a side street blowing a horn or a train or anything, that the plaintiff Hart was listening because he was a cautious driver and that if a locomotive bell had been ringing he would have heard it, there was sufficient positive testimony at least to present a case for the jury.

There is conflicting testimony in regard to the light signals, there being some testimony that there were no lights whatsoever. This may be due partly to the fact that the entire accident happened within a second or two or possibly a fraction of a second. Plaintiff Hart was driving his car near the curb on the side of the road from which the train was coming. The testimony is that he was driving from 20 to 25 miles an hour. This would mean that he was going almost 30 feet in a single second. Notwithstanding the claim of one of the defendant's witnesses that the train came to a stop, the conductor states that it slowed down to 2 or 3 miles an hour. Even at that rate, it would only take a very few seconds for the train to emerge into the street. It was the claim of defendant that the switchman ran out with a lantern to give a signal, but, even if this is true, his arrival in the street must have almost immediately preceded that of plaintiff's car. Plaintiff Hart testified that no signal lights were given either on the street or on the tank car. Essex, a corroborating witness, stated that there was a light waved from the train, but none on the street. Defendant produced testimony to the contrary. Plaintiffs were interested witnesses, and Mr. and Mrs. Essex were not. The interest of many of defendant's witnesses was also shown. It is the province

of the jury to weigh testimony that is conflicting and also to pass upon the credibility of witnesses.

We do not disagree with the law as set forth in the foregoing opinion, in which my brother refers to the case of *Lambert* v. *Railway Co.,* 209 Mich. 107, and also the case of *Moreau* v. *Grandmaison,* 220 Mich. 238. The latter case in the majority opinion very tersely states in a reference to the *Lambert Case* that several witnesses testified that the crossing signal was given; others that they did not hear it, but not that they were listening. In the *Moreau Case,* both defendants swore positively that the horn was sounding and plaintiff did not testify that he was listening or giving any heed to what vehicles might be coming from behind.

In the instant case, we have positive testimony that the witnesses were listening and did not hear any bells rung. The courts have never held that witnesses, who were carefully listening and did not hear the locomotive bell rung, must also show by direct evidence the physical non-ringing of the bells.

The other cases cited refer to entirely different factual situations, some involving cars that were broken down and became obstacles in the road, or accidents that happened at railroad crossings where the parties saw or should have seen oncoming trains. We are bound by the verdict of the jury on the facts.

The judgment *non obstante veredicto* should be set aside and the case remanded for a judgment in accordance with the verdict of the jury. Plaintiffs' should recover costs.

TOY, J., concurred with BUTZEL, J.

POTTER, J., did not sit.