## WILLIAMS v. GRAND TRUNK WESTERN RAILROAD COMPANY.

1. RAILROADS—AUTOMOBILES—WARNING DEVICES—EVIDENCE—QUESTION FOR JURY.

Testimony of occupants of southbound car in which plaintiff, a 13-year-old girl, was riding when struck by eastbound freight train in the nighttime at a crossing guarded by flasher lights and gong, that none of them either heard or saw the signals nor the headlight or bell of the locomotive, together with positive testimony that the flasher lights and gong were not working at the time the car approached the crossing *held,* to present a question for the jury whose verdict may not be disturbed even though the Supreme Court, had it been the trier of the facts, might have reached a different result.

2. SAME—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

The question of contributory negligence of 13-year-old girl, plaintiff in action against defendant railroad company, who was a passenger in car which was struck by defendant's train *held,* at most a question for the jury, there being no evidence that she had assumed any duties with respect to her safety which she had failed to exercise.

3. DAMAGES—LOSS OF EYE—DISFIGUREMENT.

Verdict of $25,000 to 13-year-old girl who lost left eye and suffered pain, abrasions about the face, a skull fracture, had 144 stitches in her face and was somewhat disfigured *held,* not excessive under the circumstances.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 44 Am Jur, Railroads §§ 621–631.
[2] 44 Am Jur, Railroads §§ 529 *et seq.,* 631.
[3] 15 Am Jur, Damages § 203 *et seq.*
[3] Excessiveness of damages in action by person injured for personal injuries not resulting in death. 46 ALR 1230; 102 ALR 1125; 16 ALR2d 3.
Adequacy of damages in action by person injured for personal injuries not resulting in death. 16 ALR2d 393.

Appeal from Ingham; Coash (Louis E.), J. Submitted October 4, 1955. (Docket No. 7, Calendar No. 46,541.) Decided December 1, 1955. Rehearing denied December 28, 1955.

Case by Estelle Williams, guardian of the estate of Marilyn Ruth Daniels, minor, against Grand Trunk Western Railroad Company, a Michigan corporation, for damages resulting from collision of automobile and freight train. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Gregg, Glassen, Parr & Rhead (H. W. Glassen,* of counsel), for plaintiff.

*Jennings, Fraser, Parsons & Trebilcock (H. Victor Spike* and *Forbes B. Henderson,* of counsel), for defendant.

BUTZEL, J. On March 3, 1953, Marilyn Ruth Daniels, a 13-year-old girl, plaintiff herein by her guardian, together with 2 other girls had driven from Lansing to Battle Creek to visit a mutual friend. They were guest passengers in a car operated by its owner Jewel Gill. On arrival in Battle Creek in the early evening they drove to the home of one Phyllis Virgil. Thereafter Mr. Gill proceeded across the street to a poolroom. He loaned his car to the girls in order that they might visit Phyllis' mother-in-law. Plaintiff, sitting in the right front seat, was 1 of 4 girls in the car then being driven by a Mrs. Emma Barber, 15 or 16 years of age. She had no operator's license. It appeared that they were all unfamiliar with Battle Creek, including Phyllis Virgil who apparently had just recently moved there. However, it also appeared that the latter's home was on Washington avenue a short distance from the railroad crossing where the accident occurred. En route to the mother-in-law's home they crossed these

tracks. On finding the lady absent from her home the girls went for a ride during which they became lost and sought directions back to the house on Washington avenue. They were told to travel east on Hamblin street to Washington and thence to the right or south.

A block or so south of the intersection of Washington with Hamblin is the railroad crossing in question. It consisted of 3 main tracks with 2 spur tracks a few feet to the north. The main tracks were slightly raised and were guarded by the familiar white warning posts of crossbuck design equipped with an automatic flashing red light and bell warning apparatus. The poolroom across from Phyllis' home was on Washington avenue, a short distance south of the tracks. A slight rain was falling though the evidence showed it did not obscure vision. However, the windows were raised.

On turning into Washington from Hamblin the girls proceeded south over the crossing where they were struck by an eastbound freight train running on the middle of the 3 main tracks. The right front portion of the automobile collided with the left front of the engine of the train. Plaintiff lost her left eye and suffered other injuries as a result of the collision. She brought suit in the circuit court for the county of Ingham and secured a judgment on a jury verdict of $25,000. Defendant has appealed after denials of its motions for new trial and judgment *non obstante veredicto*.

The principle question here concerns defendant's negligence. It is plaintiff's contention that the crossing signals required by statute, CL 1948, § 469.8 (Stat Ann § 22.768), either were not working at all or were not working for the statutorily prescribed period. As evidence plaintiff offered 2 categories of testimony, characterized in brief of counsel as follows: First, that she and her witnesses did not

*hear* the statutory signals; second, that while being alert and looking, plaintiff, the driver of the car and the other passengers did not *see* the moving signal light required by the statutory regulation.

The pertinent testimony of the driver is as follows:

"*Q.* You have said that at no time did you see any flashing lights on the crossing, is that right?

"*A.* No, I didn't.

"*Q.* And you were looking?

"*A.* Yes, I was looking. &ast; &ast; &ast;

"*Q.* Did you at any time see the headlight of a train?

"*A.* No, I didn't.

"*Q.* Did you at any time hear any whistles?

"*A.* No, I didn't.

"*Q.* Did you at any time hear any bells or gongs?

"*A.* No.

"*Q.* Did you at any time see any flashing lights?

"*A.* No."

This testimony was essentially reiterated by the other occupants of the automobile. They also testified that they were anxious to find Mr. Gill so that they could return to Lansing. Two testified that they were looking straight ahead to where they expected to find the poolroom. They were not looking out of either side of the car as they approached the crossing and 1 occupant testified that she did not even see the white crossbuck sign to which the statutory signals were affixed. While all said they were unfamiliar with the area, they admitted that they had passed over the same tracks a few hours before. They testified that the signals were working after the accident. None saw the train at all. Defendant contends that the evidence offered by plaintiff was merely negative evidence of any failure of the signals to operate, as opposed to its own positive evidence that they were operating, and therefore was insuffi-

cient to take the case to the jury as a question of fact.

In order to have a jury question in such instances the cases generally require either positive testimony that the signals were not working or testimony that the signals were not seen or heard accompanied by evidence that a certain degree of attention and care was being exercised .toward the possible area of danger. Mere testimony that the signals were not *heard* or *seen* does not, in and of itself, present an issue of fact as to whether or not they were operating. These principles were discussed and summarized in the case of *Lambert* v. *Minneapolis, St. Paul & Sault Ste. Marie R. Co.*, 209 Mich 107. They have been adhered to in later decisions. See *Moreau* v. *Grandmaison*, 220 Mich 238 (affirming judgment for defendant); *Mulvaney* v. *New York Central R. Co.*, 233 Mich 350 (reversing judgment for plaintiff); *Elias* v. *Collins*, 237 Mich 175 (52 ALR 1118) (affirming directed verdict for defendant); *Holser* v. *City of Midland*, 330 Mich 581 (reversing judgment for plaintiff); *Buchthal* v. *New York Central R. Co.*, 334 Mich 556 (affirming directed verdict for defendant); *Hudson* v. *Grand Trunk Western R. Co.*, 227 Mich 1 (23 NCCA 682) (jury question); *Miller* v. *Manistique & Lake Superior R. Co.*, 234 Mich 184 (jury question); *Patton* v. *Grand Trunk Western R. Co.*, 236 Mich 173 (jury question).

Without passing upon ,or considering the degree or· extent of attentiveness necessary to raise a jury question, the issue which basically split the Court in *Hart* v. *Grand Trunk Western R. Co.*, 278 Mich 343, we find a question of fact present in this case. Following the testimony above quoted, there occurred on cross-examination of the same witness:

"*Q.* The lights that were flashing were those flasher lights and the gong just before you get to the crossing?

"*A.* No they weren't on then."

Here is positive testimony that the signals were not operating properly. Whether or not this statement should be given much weight or credibility in light of all of the other testimony to the effect that the signals merely were not heard or seen, is exclusively a question for the jury and not for this Court. We cannot disturb their finding. Appellant does not contend in this Court that the verdict is against the great weight of the evidence. We must accept the jury's decision on the disputed question of fact even though we, as triers of facts, might have reached a different result. *Steudle* v. *Yellow & Checker Cab & Transfer Co.,* 287 Mich 1. Accordingly we need not consider the case of *Cinadar* v. *Detroit, Grand Haven & Milwaukee R. Co.,* 193 Mich 38, except to say that it is inapplicable and adequately explained in the *Lambert Case, supra,* at p 111.

Appellant urges that plaintiff was contributorily negligent as a matter of law. There is no evidence that plaintiff assumed those duties which the plaintiff in *Buchthal* v. *New York Central R. Co., supra,* did but failed to exercise and was thereby found "unquestionably guilty of contributory negligence." At most it was a jury question.

Appellant also contends that the verdict of $25,000 was excessive. Plaintiff was 13 years of age at the time she was injured. As a result of the accident she suffered many abrasions and lacerations about the face and what the doctor described as a skull fracture. The injuries to her left eye necessitated its removal by way of surgery some 16 days later. She suffered pain. She had 144 stitches in her face and was somewhat disfigured. We are cited to

*Newell* v. *Detroit, Toledo & Ironton R. Co.,* 235 Mich 687, where a verdict of $25,000 was remitted to $15,000. Nothing appears in that opinion except that the 24-year-old plaintiff lost his eye and thereby his earning power. More important, however, it was decided in 1926. On consideration of all of the circumstances and recent awards involving loss of an eye, some of which are collected in 16 ALR2d 3, 130, and supplements, we do not find the verdict in this case excessive.

The judgment is affirmed, with costs.

CARR, C. J., and SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.