HALL v CONSOLIDATED RAIL CORPORATION

Docket No. 114508. Decided June 21, 2000. On application by the defend-
ant for leave to appeal, the Supreme Court, in lieu of granting
leave, reversed the judgment of the Court of Appeals and reinstated
summary judgment for the defendant.

Larina Hall brought an action in the Wayne Circuit Court against the
Consolidated Rail Corporation, alleging that its warning gates and
lights at a certain crossing were not functioning properly and
resulted in injuries suffered in a collision between her car and a
train operated by the defendant. The court, Andrea J. Ferrara, J.,
granted summary disposition for the defendant under MCR
2.116(C)(10), finding no genuine issue of material fact and that the
railroad was entitled to judgment as a matter of law. The Court of
Appeals, DOCTOROFF, P.J., and SMOLENSKI and WHITBECK, JJ., reversed
in an unpublished opinion per curiam (Docket No. 201091). The
defendant seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held*:

The plaintiff did not come forward with evidence sufficient to
defeat the defendant's motion for summary disposition.

Testimony failed to establish a genuine issue of material fact
regarding whether the defendant had notice of any alleged danger-
ous condition. It constituted mere speculation or, at most, nothing
more than a promise to offer factual support for a claim at trial.
The cases cited by the Court of Appeals are inapplicable. On the
record before the circuit court, summary disposition was appropri-
ate, and the Court of Appeals erred in reversing the circuit court's
judgment.

Reversed.

*Jeffrey M. Mallon* for plaintiff-appellee.

*Durkin, McDonnell & Clifton* (by *Joseph J. McDon-
nell* and *Gregory A. Clifton*) for defendant-appellant.

PER CURIAM. The plaintiff was injured in a collision
between the car she was driving and a train operated

by defendant Consolidated Rail Corporation (Conrail). She sued the railroad,[1] claiming that its warning gates and lights were not functioning properly. The circuit court granted summary disposition for the defendant under MCR 2.116(C)(10), finding no genuine issue of material fact and that the railroad was entitled to judgment as a matter of law. However, the Court of Appeals reversed.[2]

We conclude that the plaintiff did not come forward with evidence sufficient to defeat the motion for summary disposition. Thus, we reverse the judgment of the Court of Appeals and reinstate the circuit court's judgment.

I

At the time of the accident, the plaintiff was traveling eastbound on Visger Road in Ecorse. A total of eight sets of railroad tracks cross the road at that location. In order as the plaintiff would have approached them were a Grand Trunk Western (GTW) yard track, two GTW tracks for through traffic, two Conrail tracks for through traffic, and three Conrail yard tracks. The Conrail train with which plaintiff collided was northbound on the easterly of the two Conrail main-line tracks, i.e., the fifth set of tracks that the plaintiff would have encountered. The two Conrail main-line tracks (including the one involved in this accident) are guarded by warning lights and gates. There is another set of lights and gates guard-

---

[1] Plaintiff's amended complaint also named the engineer who was operating the train involved in the collision. For convenience, we will simply refer to Conrail as the "defendant."

[2] Unpublished opinion per curiam issued March 30, 1999 (Docket No. 201091).

ing the entire array of tracks (except the GTW yard track, which lies outside the first set of lights). Thus, as plaintiff approached the track at which she collided with the train, plaintiff passed two sets of lights and gates.

The key question on Conrail's motion for summary disposition was whether the warning lights and gates were in fact working. In support of the motion, Conrail presented evidence that the railroad signal system at the crossing was electronically activated when a northbound Conrail train reached a point on the track 2,453 feet south of the crossing. The flashing signal lights, bells, and gates at the crossing are interconnected, so that when a train is located on any one of the tracks, except the first GTW track, the signals are automatically activated. On the basis of the twenty-nine-mile-per-hour speed of the Conrail train, the signal system at the Visger Road crossing had begun to operate approximately fifty-seven seconds before plaintiff's accident.

Under federal regulations, Conrail conducts monthly inspections of all its railroad crossings. On February 4, 1992, the day before the accident, such an inspection of the signal lights, bells, and gates at the Visger Road crossing took place. That inspection, like those for the previous six months, found that the signal system at the crossing was functioning properly.

The deposition testimony of several witnesses was that the Visger Road railroad signal system was operating properly on the day of the accident. During the several hours before plaintiff's accident, a Conrail locomotive engineer had been operating his engine

across the Visger Road crossing. He testified that the signal system was operating correctly.

The three members of the Conrail train crew operating the train involved in this accident testified that as their train approached the crossing they observed that the flashing signal lights were in operation and that the gates were lowered as their train crossed over Saliotte Street, one-half mile south of Visger Road. The train crew indicated that they observed plaintiff's vehicle drive around the first lowered gate outside what would be the second track at the crossing and then drive around the second lowered gate outside what would be the fourth track at the crossing. Plaintiff's vehicle continued the final forty-one feet to the location of the fifth track where the accident occurred. The crew testified that because of the slow speed of plaintiff's vehicle, they believed she intended to stop within the forty-one feet available between the fourth and fifth track.

Following the accident, the signal system at the crossing was still in operation when the police arrived. In fact, the lowered railroad gate on the opposite or northeast side of the fifth track was lying on the ground after being struck by plaintiff's vehicle.

In addition, the entire Visger Road railroad signal system was the subject of extensive inspection and testing immediately after the accident and the signal lights, bells, and gates were again all found to be operating correctly. Similarly, an inspection of the entire system on February 6, 1992, the day after the plaintiff's accident, continued to show the signal system was working properly.

In opposition to the motion, the plaintiff relied on the deposition testimony of Barbara Jones, who testi-

fied that she was stopped at the eastern most warning gate and had traveled that road many times. She testified as follows:[3]

> *Q.* Let's talk about really, about a year before February 5th of '92, did you become aware of anything unusual about the operation of the gates and flashing lights at that railroad intersection of Visger?
>
> *A.* The lights don't work.
>
> *Q.* How do you mean?
>
> *A.* You know, they blink, they're in an up position most of the time.
>
> *Q.* What's in an up position?
>
> *A.* The lights—the poles aren't down.
>
> *Q.* The wooden gates?
>
> *A.* The wooden gates, right, they're up and they're blinking most of the time. They haven't worked since they took the lady—there's a lady that used to do those gates . . .

---

[3] In addition, shortly after the accident, Ms. Jones gave a statement to Conrail personnel, which said in part:

> *Q.* You saw, you saw, when you first came up to the crossing you saw the lights flashing, now you didn't notice the headlight or the whistle of the train?
>
> *A.* No.
>
> *Q.* You didn't notice any train whistle?
>
> *A.* No. Because I was like thinking that if it was one of those times when we can come up to the railway and it's not working, everything, the signals, they're just going and they go all day without being repaired, then we go around those days. Those are the days when we do cross the railroad tracks with the lights blinking, the rails down because Jefferson, when I turn off of Jefferson on the Visgar [sic] that was, on the clock at work it was 11:48. That clock is four minutes fast and lights were blinking then by a train. And then I would go up there half the time because sometimes it is a quick train or train or that's going real fast, and uh, in fact I couldn't even hear the whistles. Usually you listen for the sound of the whistle, you know. But then as I got there and the gate went down, there he was. It couldn't have been more that [sic] 1500 feet. Well see, with not giving a passenger enough time to clear that area, well it's uh . . .

*Q.* Right.

*A.* . . . She would monitor them. Once they took her down, it's like the system never worked. Sometimes the gates are broken and they're just down, and you have to go around them. Situations like that have occurred, and it's not just in the last year be [sic] prior to the incident, this has been for quite a few years.

*Q.* Have you ever seen a situation where the lights have been flashing, but the gates don't come down?

*A.* Oh, yes.

*Q.* Several times?

*A.* Yes.

*Q.* Before February 5th of '92?

*A.* Way before.

*Q.* Have you ever seen situations where trains have crossed that intersection at Visger, and no lights have been on and no gates have been down?

*A.* Well, my daughter and I experienced that, yes.

*Q.* Let me ask you this, have you seen situations at that railroad intersection at Visger where people would be crossing the tracks before gates would come down?

*A.* Yes, often.

*Q.* And then gates would come down?

*A.* While you're in it, it's happened to myself, quite a few cars have been in and the gates have just come down, because the train is just coming.

*Q.* When you say, people have been in it, do you mean between the two outer gates they've been . . .

*A.* It's like you're—you've started in on crossing the track, and then the gates come down and you're like caught . . .

*Q.* In the middle?

*A.* . . . Yeah, and then, you do have to go around the center lines, and then back, you know, on out.

The circuit court granted defendant's motion for summary disposition. It explained:

The court reviewed the deposition of Barbara Jones and the statement of Barbara Jones taken on February 2, 1992 and is not satisfied that her deposition raises a question of fact. It's clear to this court that had the plaintiff not weaved her way around the gates, ignoring flashers, bells and the trains [sic] horn, the accident would not have occurred.

After reviewing the entire record, it's clear to this court that there is no clear issue of material fact that must be decided by the tryer [sic] of fact. The defendant had complied with all MDOT requirements and no authority requires more to avert a finding of negligence. .

II

The Court of Appeals said that the trial court correctly held that the defendant was under no duty to install additional or different warning systems at the crossing where plaintiff was injured, citing MCL 257.668(2); MSA 9.2386(2), and *Turner v CSX Transportation, Inc*, 198 Mich App 254, 256; 497 NW2d 571 (1993). However, it said the focus of the plaintiff's complaint was the failure of defendant to maintain the required warning systems and devices in proper working order and that defendant had notice of the defect. The Court found summary disposition under MCR 2.116(C)(10) to be improper, explaining:

We also conclude that summary disposition was improper under MCR 2.116(C)(10). Although defendant presented evidence that the crossing was inspected both the day before and the day after the accident, at which time all warning devices were determined to be in proper working order, the testimony of Barbara Jones, an eyewitness to the accident, viewed most favorably to plaintiff, was sufficient to establish a genuine issue of material fact as to whether the crossing gates were working properly at the time of the accident. Moreover, Jones' testimony concerning a possible malfunc-

tion at the time of the subject accident, viewed in conjunction with her testimony of a history of malfunctions at the same location, was sufficient to establish a genuine issue of material fact with regard to whether defendant had notice of the allegedly dangerous condition. *Wheeler [v Grand Trunk W R Co*, 161 Mich App 759; 411 NW2d 853 (1987)]; see also *O'Loughlin v Detroit & Mackinac R Co*, 22 Mich App 146, 154, n 9; 177 NW2d 430 (1970). The weight and credibility of Jones' testimony was for the trier of fact to resolve. *Williams v Grand Trunk W R Co*, 344 Mich 84, 88-89; 73 NW2d 455 (1955).

III

We agree with the circuit court that the plaintiff failed to come forward with evidence to defeat the motion for summary disposition. Ms. Jones' testimony failed to establish a genuine issue of material fact on the question whether Conrail had notice of any alleged dangerous condition. The cases cited by the Court of Appeals are inapplicable. In *Wheeler, supra,* there was testimony by the railroad's signal supervisor that the railroad was aware before the accident that there had been prior malfunctions of the signals. In addition, other witnesses, including a police officer, testified about having reported malfunctions to the railroad. Similarly, in *O'Loughlin v Detroit & Mackinac R Co, supra,* evidence was presented that the railroad had been contacted before the incident on several occasions to send an employee out to turn off the signals at the crossing that had been on for hours with no train in sight. Further, there was testimony that the union representing the railroad's train crews had registered complaints with the railroad before the accident, stating that the flashers were not working properly at the subject crossing.

Plaintiff's assertion that Ms. Jones' testimony permits an inference that Conrail had notice of malfunctioning of the signal system constitutes mere speculation or, at most, nothing more than a promise to offer factual support for a claim at trial, which is insufficient. See *Smith v Globe Life Ins Co*, 460 Mich 446, 455, n 2; 597 NW2d 28 (1999). Similarly, any claim that Conrail was on notice of the defect must fail because Conrail inspected the signal system the day before the accident and found it to be working properly. See *Beach v St Joseph*, 192 Mich 296, 307; 158 NW 1045 (1916); *Freed v Simon*, 370 Mich 473, 475; 122 NW2d 813 (1963).

On the record before the circuit court, summary disposition was appropriate, and the Court of Appeals erred in reversing the circuit court's judgment. Accordingly, the judgment of the Court of Appeals is reversed, and the summary disposition for the defendant is reinstated.

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.